IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRUCE WALKER | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | |
| DALE A. MEISEL and | : | |
| LEHIGH COUNTY PRISON | : | NO.  09-6136 |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, M.J.                                    October 14, 2011

     In this action brought pursuant to 42 U.S.C § 1983, pro se Plaintiff Bruce Walker

("Plaintiff") seeks monetary damages against Defendants Dale A. Meisel and Lehigh

County Prison (collectively "Defendants") for unlawful confinement in violation of his

due process rights because Defendants failed to award him time credit to his prison

sentence while he was on parole in an inpatient drug rehabilitation program.  Presently

before the court is Defendants' motion for summary judgment (Doc. 20).  For the reasons

set forth herein, I will grant the motion and enter judgment for Defendants.[1]

**I.       FACTS AND PROCEDURAL HISTORY**

     The facts are taken from Plaintiff's original complaint and brief (Doc. 3),

Plaintiff's brief construed as an amended complaint (Doc. 17), Petitioner's criminal

docket in the Court of Common Pleas of Lehigh County (CP-39-CR-0001019-1996)

("Lehigh Co. Docket"), and a Report and Recommendation filed by the Honorable Henry

Perkin, United States Magistrate Judge for the Eastern District of Pennsylvania, in

_____

[1]The Honorable William H. Yohn, Jr., referred the matter to me upon the consent
of the parties.  See Docs. 14 & 15.

Plaintiff's prior Petition for Writ of Habeas Corpus.  See Walker v. Meisel, No. 09-3644 (E.D. Pa. May 17, 2010) (Perkin, M.J.) ("Habeas R&R").

On October 1, 1996, Plaintiff entered a plea of nolo contendere to simple assault before the Honorable Edward D. Reibman of Lehigh County, who then sentenced Petitioner to a term of imprisonment of not less than time served and not more than one day less than two years.  See Lehigh Co. Docket 10/01/1996 (Entry 9).  In addition, Judge Reibman sentenced Plaintiff to pay the costs of prosecution and restitution, and instructed that he be given credit for time spent in custody.  Id.  Plaintiff did not appeal his sentence.

Judge Reibman granted Plaintiff parole effective November 22, 1996.  See Lehigh Co. Docket 11/22/1996.  As a condition of parole, Judge Reibman required Plaintiff to attend an inpatient drug and alcohol rehabilitation program.  See id. 10/01/1996 (Entry 10).  Plaintiff attended in-patient drug treatment at Keenan House, a drug treatment and rehabilitation facility located in Allentown, Pennsylvania, for a period of twenty-eight days from November 22, 1996, through December 20, 1996.  See Doc. 3 at 4 (Statement of Claim).

On June 26, 1997, the Office of Lehigh County Probation and Parole filed allegations of parole violations against Plaintiff.  Petitioner failed to appear for his Gagnon I hearing[2] on March 23, 1998, and a bench warrant was issued by Judge

_____

[2]"In Gagnon v. Scarpelli, the Supreme Court held that a person accused of violating the terms of his probation was entitled to two hearings before revocation and resentencing.  The first, a Gagnon I hearing, serves to determine whether there was a probable cause. . . .  The second, a Gagnon II hearing, determines whether the person in fact violated the terms of his or her probation . . . ."  Heilman v. T. W. Ponessa & Ass.,

Reibman.  See Lehigh Co. Docket 03/23/98.  Judge Perkin outlined Plaintiff's subsequent

state court odyssey as follows:

> On February 4, 2002, [Plaintiff] was brought before Judge
> Reibman.  Following dissolution of the bench warrant, his
> Gagnon II hearing was held.  The court concluded that [Plaintiff]
> violated the conditions of his parole as alleged, and revoked
> parole remanding him to Lehigh County Prison to serve the
> balance of the sentence imposed on October 1, 1996.  [Plaintiff]
> was immediately re-paroled to Franklin County.[3]  [Plaintiff] was
> transferred from Lehigh County Prison to Franklin County Prison
> on February 8, 2002.
>
> On October 14, 2002, Lehigh County Parole filed a
> petition alleging violations of [Plaintiff's] parole. . . . [Plaintiff]
> was arrested on April 16, 2007 and held in Cambria County
> Prison with a detainer from Lehigh County for his parole
> violations.  On May 21, 2007, [Plaintiff's] Gagnon II hearing was
> held.  [Plaintiff] conceded the allegations.  Judge Reibman
> revoked [Plaintiff's] parole and remanded him to Lehigh County
> Prison to serve the balance of his sentence.  [Plaintiff] was
> immediately reparoled and ordered to abide by his original
> conditions.
>
> On March 10, 2008, another arrest warrant was issued for
> violations of parole.  The arrest warrant was returned as served
> on August 4, 2008 and [Plaintiff's] Gagnon I hearing was waived
> on August 7, 2008.  On August 25, 2008, following [Plaintiff's]
> Gagnon II hearing, Judge Reibman concluded that [Plaintiff] had
> again violated the conditions of his parole.  It was determined

No. 09-1667, 2009 WL 82707, at 1 n.1 (3d Cir. Jan. 14, 2009) (citing Gagnon v.
Scarpelli, 411 U.S. 778, 781-82, 784 (1973)).  Gagnon extended the Supreme Court's
ruling in Morrissey v. Brewer, 408 U.S. 471 (1972), which held that a parolee facing
porole revocation is entitled to due process protections.  See Gagnon, 411 U.S. at 782.

[3]Plaintiff had previously pled guilty in Franklin County to a charge of driving
under the influence of alcohol and was sentenced on April 3, 2002, to serve "not less than
3 months nor more than 23 months" in Franklin County Prison.  See Franklin Co. Docket
CP-28-CR-000043-2002.

> that [Plaintiff] had failed to report in person at such times and
> places as instructed and had changed his approved residence
> without permission.  [Plaintiff's] parole was revoked and he was
> remanded to Lehigh County Prison to serve the balance of his
> sentence. . . .

Habeas R&R at 2-4 (internal footnote omitted); see also Lehigh Co. Docket.  In

calculating the remaining balance on Plaintiff's sentence, Lehigh County Prison did not

give Plaintiff credit for the twenty-eight days he spent in Keenan House while on parole.[4]

Plaintiff filed two motions to modify or reduce sentence, which were denied by Judge

Reibman by order entered on November 5, 2008, and Petitioner did not appeal.  See

Habeas R&R at 4; Lehigh Co. Docket.

On July 15, 2009, Judge Reibman filed a correspondence from Plaintiff which the

state court treated as a petition for writ of habeas corpus.  See Habeas R&R at 7; Lehigh

Co. Docket.  Plaintiff alleged ineffectiveness of counsel, false testimony from the parole

officer, and erroneous time calculation.  On July 30, 2009, Judge Reibman denied

Plaintiff's request for habeas corpus, noting that Plaintiff sought to raise the same issues

that were addressed by his order entered on November 5, 2008.  See Habeas R&R at 8;

Lehigh Co. Docket.  Petitioner did not appeal.

---

[4]As noted, Plaintiff's maximum sentence was one day less than two years, which
equals 729 days.  During recalculation, the Lehigh County Prison made the following
findings:  Plaintiff was in custody from March 24, 1996 to August 9, 1996 (138 days),
from October 1, 1996 to November 22, 1996 (52 days), from April 18, 2007 to May 21,
2007 (33 days), and from August 2, 2008 to December 21, 2009 (506 days).  Thus, the
total time Petitioner spent in custody is 729 days, consistent with Plaintiff's original
maximum sentence.  See Walker v. Meisel, No. 09-3644 (Doc. 14 at 15-16 & Ex. A).

On September 14, 2009, Plaintiff filed a federal Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, arguing that he was re-sentenced in violation of his Double Jeopardy Clause and due process rights, that he was separately denied due process concerning a notice issue, and ineffective assistance of counsel.  See Habeas R&R at 8-9 n.11.  On May 17, 2010, Judge Perkin issued a Report and Recommendation in which he recommended that the petition be dismissed because Plaintiff's claims were unexhausted.  See id.  On June 25, 2010, the Report and Recommendation was adopted without objection by the late Honorable Thomas H. Golden.  See Walker v. Meisel, No. 09-3644 (Doc. 16).

Plaintiff commenced this action by filing a complaint in the Eastern District of Pennsylvania on December 30, 2009, alleging that the failure to include his twenty-eight-day stay in Keenan House in the recalculation of his sentence violated his constitutional rights.  See Doc. 3.  By Scheduling Order dated March 18, 2011, I gave Plaintiff fourteen days to file any amended pleadings.  See Doc. 11.  Plaintiff subsequently filed a "Brief in Support of Plaintiff's Complaint" (Doc. 17), which I construed as an amended complaint in an Amended Scheduling Order dated June 13, 2011.  See Doc. 18.  Defendants answered both the complaint and amended complaint.  See Docs. 8 & 19.  On August 26, 2011, Defendants filed the present motion for summary judgment (Doc. 20), to which Plaintiff filed a response (Doc. 21) containing limited argument largely unresponsive to the motion.

II.     **STANDARD OF REVIEW**

A moving party is entitled to summary judgment "if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it might affect the outcome of the case under governing law. Id.

The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). After the moving party has met its initial burden, the adverse party must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Techs., Inc., 78 F.Supp.2d 402, 408 (E.D. Pa. 2000). The evidence presented must be viewed in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255; Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir. 1983).

III.    **DISCUSSION**

Plaintiff alleges that Defendants refused to credit the time he spent participating in a drug rehabilitation program at Keenan House to the remaining balance of his prison sentence, and that Defendants' refusal to do so amounted to unlawful confinement and a

violation of Plaintiff's due process rights.  See Doc. 3.  Defendants concede that Plaintiff

was not given credit for the twenty-eight days he spent in Keenan House rehabilitation

facility towards his original sentence.  See Doc. 8 at 6; Doc. 20 at 6 of 24.  In contrast to

Plaintiff's argument that his freedom was restricted in Keenan House to the point that it

rose to the level of custody, Defendants argue that Plaintiff's participation in the Keenan

House rehabilitation program does not amount to "confinement" as defined under

Pennsylvania Law.  See Doc. 20 at 6 of 24 (citing 42 Pa. C.S.A. § 9760(1)).  Defendants

assert that because Plaintiff was not legally entitled to be awarded credit for time served,

no genuine issue of material fact exists with regard to Plaintiff's claim and Defendants are

therefore entitled to judgment as a matter of law.  See id. at 6-8 of 28.

To establish that a defendant is liable pursuant to section 1983 for incarceration

without penological justification, a plaintiff must demonstrate three elements: "(1) that

the defendant had knowledge of the prisoner's problem and thus of the risk that

unwarranted punishment was being, or would be, inflicted; (2) that the defendant either

failed to act or took only ineffectual action under the circumstances, indicating that the

defendant's response to the problem was a product of deliberate indifference to the

prisoner's plight; and (3) a causal connection between the official's response to the

problem and the unjustified detention."  Freeman v. Martinez, 304-CV-1226, 2005 WL

1309023 (M.D. Pa. May 31, 2005) (Smyser, M.J.) (citing Moore v. Tartler, 986 F.2d 682,

686 (3d Cir. 1993)).  As a threshold matter, therefore, Plaintiff must show that he was incarcerated without justification.

The Pennsylvania statute governing credit for time served provides in relevant part as follows:

> Credit against the maximum term and any minimum term shall be given to the defendant for all time spent in custody as a result of the criminal charge for which a prison sentence is imposed or as a result of the conduct on which such a charge is based.  Credit shall include credit for time spent in custody prior to trial, during trial, pending sentence, and pending the resolution of an appeal.

42 Pa. C.S.A. § 9760(1).  "The principle underlying [section 9760] is that a defendant should be given credit for time spent in custody prior to sentencing for a particular offense." Commonwealth v. Fowler, 930 A.2d 586, 596 (Pa. Super. 2007), app. denied, 944 A.2d 756 (Pa. 2008).  However, Pennsylvania courts have had to determine the meaning of "time spent in custody" because the phrase is not defined in section 9760 or in any other provision of the Pennsylvania Sentencing Code.  Id. at 595-96.  As a result, the question of whether treatment in a drug rehabilitation facility can be considered "custody" as defined by section 9760(1) is generally left to the discretion of the sentencing court. See id. at 596 ("Generally, it is within the trial court's discretion whether to credit time spent in an institutionalized rehabilitation and treatment program as time served 'in custody.'") (citing Commonwealth v. Conahan, 589 A.2d 1107 (Pa. 1991)).

In Conahan, the Pennsylvania Supreme Court concluded that the appellant's ninety-five days of voluntary commitment to inpatient custodial alcohol rehabilitation

was a sufficient institutional setting to affirm granting credit for time served, stating as follows:

> Clearly our acceptance of this type of inpatient institutional rehabilitation in no way *entitles* one . . . to credit for such rehabilitative commitment *as of right*. Rather, it is only an express approval of credits for such commitment that the sentencing court in its discretion deems to be sufficient. Accordingly, we hold that the trial court . . . acted well within its discretion in awarding [the appellant] a credit of thirty days for time served in inpatient institutional rehabilitation.

589 A.2d at 1109-10 (emphasis in original). In the present case, the sentencing court did not credit Petitioner for all or part of his twenty-eight days in Keenan House.

In Fowler, the Pennsylvania Superior Court considered whether the sentencing court acted within its discretion when it denied a defendant twenty-five months' credit for time served in a "drug treatment court program." See 930 A.2d 586, 595. In concluding that the inpatient rehabilitation facilities were not so restrictive as to constitute custody, the court considered the fact that the appellate voluntarily entered the treatment program, the participants were not locked-down, the facilities' doors were locked only to prevent people from entering but did not prevent them from leaving, there were no bars on the windows, the staff would not try to stop participants from leaving, and fencing of the premises was for privacy rather than security. Id. at 597. The court therefore affirmed the denial of time credit.

Even more on point is Meehan v. Pennsylvania Board of Probation and Parole, 808 A.2d 313 (Pa. Commw. 2002), in which the Commonwealth Court addressed the

time credit issue specifically as to Keenan House – the same facility at issue in the present case.  Meehan was paroled to Keenan House from July 28, 1997, to February 6, 1998, and after it was determined that he violated his parole, the Parole Board did not credit Meehan for the time he spent in Keenan House.  Id. at 315-16.  On appeal, the Commonwealth Court stated the following:

> Although the evidence indicates that parolees are closely monitored at Keenan House, we nonetheless believe that it supports the Board's determination that Meehan failed to meet his burden of proving that the conditions at Keenan House were so restrictive as to constitute the equivalent of incarceration.  In particular . . . Meehan was not locked in and could have walked right out the door.  Nobody at Keenan House would have been authorized to stop him.  In addition, a parolee who left Keenan House would not be considered an escapee, but a parole absconder.

Id. at 316-17.  As a result, the Meehan court determined that the Parole Board did not act arbitrarily or abuse its discretion in determining that Meehan was at liberty while at Keenan House, and thus he was not entitled to credit against the sentence on re-commitment as a parole violator for time spent at the facility.  Id. at 317 (citing Jackson v. Pa. Bd. of Prob. & Parole, 528 A.2d 1004, 1006 (Pa. Commw. 1990)).[5]

        As previously noted, there is no dispute that Petitioner did not receive credit for the twenty-eight days he spent in Keenan House.  The analyses and conclusions rendered by Pennsylvania courts in Fowler and Meehan direct the conclusion that Petitioner is not

---

        [5]The Meehan court recognized that defendants sent to Kennan House before their release on parole do earn time credit, but rejected an equal protection challenge on that ground.  868 A.2d at 317.

entitled to credit for this time as a matter of right.  The decision in <u>Meehan</u> is particularly persuasive as Plaintiff treated at the identical facility within a year of the defendant in Meehan.  In addition, Defendants attach to their motion a sworn affidavit from Theodore Alex, the Director of Operations for Keenan House, in which he states that the conditions at the facility have not changed since the time of the <u>Meehan</u> ruling.  <u>See</u> Alex Affidavit, Doc. 20 Exh. "A."   According to Mr. Alex, patients at Keenan House are considered clients and not inmates, they are allowed to leave the premises for scheduled appointments, and facility employees are not permitted to restrain residents who attempt to leave, but must instead call the client's parole officer.  <u>See</u> <u>id.</u>  Keenan House does not have bars on windows or doors to prevent people from leaving, and the doors lock only to keep people from entering the facility.  In addition, there are no walls or fences whatsoever surrounding Keenan House.  <u>See</u> <u>id.</u>  All of these factors are consistent with a finding that a parolee attending in-patient treatment at Keenan House is not entitled to credit for time served.  Plaintiff has not alleged facts that would give cause to doubt Mr. Alex's affidavit.

In sum, Pennsylvania law gives sentencing courts discretion to allow time spent in drug treatment facilities to qualify as time served, but that where such discretion is not exercised, the time spent by parolees in Keenan House specifically, or in similar drug rehabilitation facilities, does not legally entitle the parolee to credit for time served. Pennsylvania courts are best suited to make such determinations on the interpretation and

application of Pennsylvania law.  Because Plaintiff cannot show that he was incarcerated

without justification, it follows that he cannot show that his due process rights were

violated.[6]  Therefore, I conclude that no genuine issue of material fact exists regarding the

sole claim in the case.[7]

---

[6]To the extent Plaintiff also alleges that his imprisonment violated his rights under the Double Jeopardy Clause, such a claim would also fail to survive summary judgment. A Plaintiff may be subject to double jeopardy if he or she is punished more than once for the same crime.  Gillespie v. Ryan, 837 F.2d 628, 630 (3d Cir. 1988).  Plaintiff's claim that his uncredited twenty-eight-day stay at Keenan House somehow caused a double jeopardy violation, or that such a violation occurred as a result of his administrative transfer from a prison in Franklin County to one in Philadelphia County (see Doc. 21 ¶ 2), is without a basis in the facts or applicable law.

[7] In his amended complaint and response to the present motion, Plaintiff appears to make two additional arguments – that the trial court violated his due process rights when it revoked his parole for failing to pay costs and fines of which he was not given notice, and that he was constructively denied his right to counsel at his Gagnon II hearing due to a "communication breakdown" between himself and his public defender in violation of the Sixth Amendment.  See Doc. 17 at 1-3; Doc. 21 ¶ 3.  Assuming for present purposes that these claims are properly raised, neither precludes the granting of summary judgment to Defendants.  As previously noted, Plaintiff's original sentence included the payment of costs and restitution.  Judge Reibman revoked Plaintiff's parole the first time (May 21, 2007) for failing to notify his parole officer of his change of residence in addition to failing to make payments toward his court costs, and the second time (on August 25, 2008) for failing to report in person at such times and places as instructed and had changed his approved residence without permission.  Plaintiff has not articulated any reason why the revocation of his parole violated due process.  In addition, Plaintiff's Sixth Amendment claim is not properly brought in the context of a section 1983 case because a public defender "does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."  Sanes v. Milgram, 08-3563, 2008 WL 5111290, at  (D.N.J. Dec. 3, 2008) (Bumb, J.) (quoting Polk Co. v. Dodson, 454 U.S. 312, 325 (1981)).

**IV.**   **CONCLUSION**

Viewing the evidence in the light most favorable to the non-moving party, see Anderson, 477 U.S. at 255, I conclude that no genuine issue of material fact exists with regard to Plaintiff's claim of that he was confined unlawfully in violation of his due process or other constitutional rights.  See Fed. R. Civ. P. 56(a).  Because I do not find any genuine issues for trial on the existing record, I will grant judgment for Defendants as a matter of law.  An appropriate Order follows.